## REPRESENTATIONS AS TO WHETHER LAND WAS SUBJECT TO OVERFLOW IN TIME OF FLOOD.

Common Pleas Court of Hamilton County.

MARGARET BIERE ET AL V. MATTIE A. STERRITT, WILL S. STERRITT AND THE GUARANTEE DEPOSIT COMPANY.

Decided, June 25, 1914.

*Fraudulent Representations—Where the Truth or Falsity of Representations Could Have Been Learned by the Exercise of Diligence, Equity Will Not Grant Relief—Representations Can Not be Treated as an Assurance of Future Events.*

A transfer of property will not be set aside on the ground of false representations as to its not being subject to overflow in time of flood in the river upon which it abuts, where the fact of the land having been overflowed in the past was known to persons living in the vicinity who could have been easily consulted by the purchaser, and as to whether it would be overflowed by some extraordinary flood in the future (as it was) no one could foretell.

*Clore, Dickerson & Clayton,* for plaintiffs.
*Ritchie & Platt,* contra.

COSGRAVE, J.

The plaintiff in this action is seeking to set aside a certain transfer of property between the plaintiff and the Sterritts, whereby the Sterritts accepted certain property on Jackson street, Cincinnati, in exchange for their improved farm of some sixteen acres near Remington, Ohio, the Sterritts having accepted the Jackson street property and a second mortgage for $599 on the Remington property in exchange for the same.

It is claimed by the plaintiff that the Sterritts fraudulently represented to her that their property was not subject to overflow from the Little Miami river, which abutted upon the property, and that relying upon the said alleged representations, having no knowledge or information in regard to the facts, she exchanged her property.

It appears from the evidence that the negotiations for the exchange of these properties were carried on during the months of June and July, 1912, the deeds exchanging the properties being executed on July 24, 1912.

It is also in evidence that the Sterritts for a valuable consideration transferred the $599 second mortgage to the Guarantee Deposit Company as collateral for a loan and that they also increased the loan on the Jackson street property, and that the Guarantee Deposit Company appears to be an innocent party in this entire transaction.

It appears from the evidence that the plaintiff took possession of this property and remained in possession until the flood of March, 1913, which overflowed it.

The evidence as to the statements or representations made by the Sterritts presents a well marked conflict. The case was tried at great length, a large number of witnesses being heard on both sides. The issue narrows itself down to the simple question whether or not the plaintiff has shown a state of facts which would justify a court of equity in granting the relief prayed for.

There is no question in this case of confidential relations between the parties. They were all persons of mature years and apparently possessing a very fair degree of intelligence.

It practically resolves itself into the question whether or not the plaintiffs relied or had a right to rely upon the representations alleged to have been made by the defendant, Sterritt, and whether such representations were false.

It may be considered a settled rule in equity that where the truth or falsity of facts can be obtained by the exercise of care and diligence on the part of the person complaining, and having failed to do so, they can not plead such want of knowledge of the facts causing the injury complained of, thus seeking to have the law do for them that which they could very readily have done for themselves by the proper exercise of diligence and caution. He who can see and should see and does not see, can not complain of ill results arising from failure to see.

The courts are not bargain makers but simply construers of bargains according to well established rules of law. If it were otherwise the courts might be called upon to exercise judgment as to business matters as to which they would be very much less qualified and competent than the parties involved in the controversy.

The evidence seems to show conclusively that the plaintiff herein from the very outset of the negotiations looking to the exchange of this property, was in a state of apprehension, almost fear, that the waters flowing through the Miami river would overflow the Sterritt property.

A review of the record in this case shows that at the very first visit of the plaintiff to the Sterritt property, she expressed such an apprehension. This was some considerable time before the consummation of the exchange of properties.

It is in evidence that Mr. Bray, who visited this property as a friend, advisor, and business representative of the plaintiff, for the purpose of obtaining information with reference thereto, to enable him to give his opinion and advice with reference to the matter, informed her that he believed the river would overflow this property.

It is also in evidence that at the time of the flood of March, 1913, in conversation with her friend, Mrs. Duerner, the plaintiff remarked to her "The neighbors told me I would get it, but I never thought it would be possible. You know I was so confident it wouldn't come.

It does not appear by a preponderance of the evidence that this feeling of confidence was justly inspired by representations made by Mr. Sterritt. There is a direct conflict between the plaintiff and the Sterritts as to what was said of the action of the river with reference to this property, in the times preceding its transfer. The burden is upon the plaintiff to establish by a preponderance of the evidence not only representations by Sterritt, but also their falsity, and the court does not feel that this has been done.

Assuming however, that the plaintiff has, by a preponderance of the evidence, established representations by the Sterritts as

to preceding overflows as a basis for a belief as to the subsequent conduct of the river, it would be, after all, only an opinion as to the probability or improbability of a certain event taking place in the future, over which the Sterritts could not have any possible control nor accurate knowledge.

Conceding all that could be claimed from the evidence, that Sterritt falsified as to the number of times the water had been on his property, and that therefore it was reasonable to conclude that it would not be there any more frequently after the transfer, could this in any sense in law be said to be a misrepresentation affecting the rights of the parties?

The effect which it is urged upon the court these representations had upon the plaintiff, was based upon matters, events and conditions to take place in the future and as to which neither of the parties could have any influence or control. They were dealing with the future action of one of the elements, namely, water flowing through a natural water-course.

The judgment of the plaintiff as to this was as much to be relied upon as the judgment of the Sterritts. What assurance could the defendants, any more than the plaintiff, have as to the future conduct of this water-course? How could either of the parties forsee these "unexpected visitations whose comings are not foreshadowed by the usual course of nature and must be laid to the account of Providence, whose dealings through they may afflict, wrong no one." Neither had any advantage by way of superior knowledge; neither had as to the other, a superior gift of foresight, if there be such a thing, which would lead to the just interference that any unfair or unjust advantage had been taken in this matter. If we are to judge the future by the past, then by the exercise of ordinary care and diligence, the plaintiff and her chosen friends and advisers, by an investigation among the neighbors, could readily have ascertained the truth or falsity of the representations of the Sterritts and it was their duty under the law, especially being in an apprehensive state of mind, to have sought other means of information as to a matter which surely must have been known to numerous people living in that vicinity. The flood of March, 1913, which brought

the relations of these parties to a climax, could in no event be said to be in the usual course of nature. It was unprecedented in character; so much so in fact that it has been held and accepted as what is recognized in law as "An act of God."

There is no question of concealment of facts in this case. They were as open to the investigation of the plaintiff as they could have been to the knowledge of the defendants. It seems quite clear to the court that the plaintiff by the exercise of ordinary care and diligence, could have known everything that the Sterritts knew about their property, and failing in the exercise of that diligence and caution, which the law exacts from all persons, the court is of the opinion that the plaintiff is not entitled to the relief prayed for.

As in all cases of this character, there is in this case something which appeals to the sympathy of the chancellor and if he could be allowed to be swayed by sentiment, he might come to a different conclusion, but the court must not be controlled by sentiment and by his emotions, but by fixed rules of law and equity, to which he is bound to yield allegience and obedience.

The established rules relating to and governing actions of this character are founded upon the highest wisdom and the soundest of common sense and all are bound by them.

The court is therefore of the opinion, and finds, that the plaintiff has not made out such a state of facts as would warrant this court in granting the relief prayed for and the petition is herewith dismissed.